May it please the Court, my name is David Russo, and I represent the Golden Gate Bridge Hwy. & Transp. Dist. This case presents several issues, one of which is, in a maritime collision case, may one of the parties be suffered a more stringent standard than another party. In this case, we urge that appellee David Rhodes was allowed to be judged on a more lenient and different standard than the bridge district, among other parties. We respectfully submit that the answer to that question is no. For many, many years, and in all the cases we cited in our briefs, it has long been held in maritime law, that in collision cases, as well as other general maritime law cases, that the standard of care is reasonable care under the circumstances. Since the 1959 decision of the U.S. Supreme Court in Carmerec, the standard of care applicable to boat owners, all boat owners, is reasonable care under the circumstances. This Court itself held in Crowley v. Maritrans in 2008, that the job and function of the trier of fact is to compare and assess the conduct of all parties before it, and based on all the facts, assess the relative negligence or not of the parties that are involved in the incident. This Court also explained in its 1998 decision in Catalina Cruises, that under the standard of care, what may be reasonable or not will depend on the circumstances. One size does not fit all. The parties in this case agreed to these principles when they stipulated to jury instructions, which were essentially modeled on the Ninth Circuit's model jury instructions in maritime law, specifically relevant to this appeal, jury instructions number 26 and 30, which adopted the reasonable care standard to be applicable to all of the parties. Yet, when it came time to make the Rule 50 motion, Appellee Rhodes urged a different standard be applied, and the district court did adopt a different standard. Appellee urged and the district court used an outlier Eleventh Circuit case, the Weisman decision, which applied a much more inflexible and much more narrow standard than the reasonable care under the circumstances test. In Weisman, the court, that court said only two circumstances can lead to comparative negligence or negligence of one of the parties involved. Did the defendant know that the boat owner was careless, a very easy standard, and or was there joint operation? That narrow test that the Eleventh Circuit applied there is wholly inconsistent with Carmorack and this Court's decisions in maritime law going back 50 or more years. The Weisman standard was a very narrow standard. What should have been applied on the Rule 50 motion was the same principles of law that the jury would have decided the case by, not a different standard. Had the Rule 50 motion been decided on the correct standard, we would respectfully urge that there was a mosaic of facts and circumstances presented on the record, which would have allowed the trier of fact to decide that Mr. Rhodes was at least 1% negligent in the case, keeping in mind, of course, that the jury assigned 70% of the blame for this incident to the speedboat. But because the district court would not allow the jury to decide the respective obligations between the two occupants of the speedboat, we ended up here. Just as some examples, it might have been enough for a reasonable jury under the correct standard to decide that allowing a relatively inexperienced boat owner to operate an unfamiliar boat that goes 60 miles an hour in unfamiliar waters would have been enough to assign some blame to Appellee Rhodes. Or added to that, the fact that Mr. Rhodes had been counseling Mr. Holzhauer during the day, asking, answering questions about how he was doing, and Mr. Rhodes was making sure he was okay, and then stopping at the critical moments may have been an additional fact that would have caused a reasonable jury to decide that there was some negligence on the part of that Appellee. Or perhaps added to that fact that it was Mr. Rhodes who directed Mr. Holzhauer in the direction of the ferry lane when saying, go make a big loop over here. Maybe that fact. The jury had all of those circumstances before it and should have been, had the opportunity to decide whether or not those facts rose to the level of unreasonable conduct that should not have been the decision of the district court on this record. For these reasons, we believe that a new trial on liability is warranted. Shifting to a second issue. One of first impression before this court or any federal appellate court that anyone has found. The scope of the privilege afforded to the Coast Guard materials under 46 U.S.C. Section 6308. It is indisputable that the goal of Congress in enacting this statute was to keep separate and apart Coast Guard proceedings and investigations on the one hand, and civil lawsuits on the other. The intent to shield agency investigations from interference by civil litigants is reflected in the enabling regulation, 46 CFR Section 4.07-1. That expressly provides that the Coast Guard's investigations, and it uses the word investigations, are not intended to be used to establish civil liability. Even a case cited by Appellee's, Guest v. Carnival Cruises, recognized that the privilege applies not just to the final report of findings by the Coast Guard, but to documents generated by the Coast Guard during its investigations. Unlike a piece of physical evidence, or maybe even a photograph, an investigator's notes of a meeting or other investigatory act are full of evidence and full of his or her impressions, much like attorney work product. Allowing that kind of material into civil lawsuits will unavoidably drag the Coast Guard into civil litigation, both in terms of discovery and as a witness. If Appellee's narrow view of the statute is upheld here, then litigants will feel unbounded and will be able to not only seek the admission of documents into evidence, but because 6308 addresses discovery, the narrower scope will allow civil litigants to bombard the Coast Guard with discovery requests for ongoing investigatory records. Sotomayor, I understand this slippery slope argument, but here, wasn't this used, this investigatory report, wasn't this used by your side to, in connection with preparation for the case? No, Your Honor. The reference to that in the Appellee's brief was to photographs, not this memorandum. This memorandum was provided to us two weeks before trial and was never used by any of our witnesses, and it was used for impeachment by the appellees. We would submit that if this door is opened, the congressional intent to protect the Coast Guard from intrusion will be lost. We would note that the Coast Guard took a similar position in the district court below and filed objections to the admissibility of this material. The district court we submit did not provide or give due deference to the agency's position as to its own regulations and its own privilege. As a matter of prejudice, the district court itself acknowledged that this memo would have great impact. We had an ambiguous and heavily redacted memo that was used to impeach a witness when the author of that memo could not be called in to testify to explain what he wrote. This was not a statement by the ferry captain. It was what someone else said was their impression of what the conversation was. The courts in Nixon and Falconer, as well as Carnival Viguesque, are instructive. They made it clear that the goal of Congress is to be prophylactic, to make sure that slippery slope was not tread too heavily on, and to make sure the Coast Guard could perform its functions for safety in marine investigations and not be involved in civil litigation. We respectfully urge that the court follow the lead of those cases, which are more numerous and we believe better reason, and uphold the privilege. Given the prejudicial impact, we believe this would also justify a new trial on liability. I have about a minute left before I hold some time for rebuttal, so let me briefly address the third issue, which is limitation of liability, which this Court has dealt with over the years many times. They say it's a disfavored remedy. What it really is is a limited remedy. Where applicable, however, it has the full force and weight of Congress, which has not repealed it, even though it has tinkered with it over the last several years. The facts of this case present a classic case for limitation of remedy, much like Western Pioneer, where this Court upheld the remedy. In Western, the captain was doing a traditional function of the master, looking at logs. He was doing it at the wrong time, allegedly, and there was an incident. The Court there held that there could be no privity or knowledge because that was an in-the-moment error by a competent mariner. Similarly here. There was no dispute that the ferry captain was a very competent mariner. He allegedly made an operational call, which is what he's supposed to do, but allegedly at the wrong time, when the Pelly's boat was turning into his path. That is not an act with which the district is complicit. That is an in-the-moment navigational error that only an omniscient vessel owner can know about. A classic case for limitation of remedy. It does not go to a systemic failure. I will reserve. Thank you, Your Honor. Thank you. You did very well. It's still morning. Good morning, Your Honor. If it may please the Court, I'm Edward Bull on behalf of Appellant Mary Holtzhauer, who has filed two appeals, one on her individual capacity and one in her representative capacity on behalf of her sons. Mrs. Holtzhauer has an interest in all four issues that are before the Court, and I want to focus primarily on the two appeals that she has brought and, most importantly, the grant of the motion for judgment as a matter of law. I don't want to be redundant and recover what Mr. Russo has covered, but there are three points that I wish to address or emphasize which are of critical importance. Two of the issues are legal issues, and one relates to the factual record underlying the motion. The two legal issues, the first issue that Mr. Russo mentioned, is the duty of care owed by a vessel owner. And this is of critical importance because the Maritime Law imposes specific duties on vessel owners as compared to other parties in the Maritime Law. For example, vessel owners owe special duties to Jones Act seamen, which are different than they owe to other individuals, different duties to longshoremen, and specific duties to passengers aboard their vessels or others. And so Mr. Rhodes owed a duty of reasonable care under the circumstances, as Mr. Russo emphasized, to all on the bay that day and to Mr. Holzhauer aboard his vessel. And, again, that's the Comeric case. And that is a legal principle that is critical to the way the Court, and the Court ultimately with the grant of the JOML, altered the rubric that the Supreme Court has said should control in a marine collision case. And the other component of that, we judge each individual actor based on the reasonable care under the totality of the circumstances. Again, arguments are made, for example, that, well, Mr. Rhodes could have he didn't have to be on the vessel or he could have been asleep at the time of the accident. But that would have been one set of circumstances. And then it would have been a negligent entrustment type argument. Here, he the circumstances show he was. Ginsburg. What is your argument here? Well, okay. So my argument is. Clearly an owner has a right to turn the driving of a boat over to somebody and have a party or go to sleep or whatever. Correct. And so in this instance, the owner did not do that. The owner maintained active control of the vessel throughout the day. Mr. Rhodes testified, nobody drives my vessel that fast when I'm aboard the vessel. He directed where the vessel was to go. He, as Mr. Russo pointed out, directed at the time, moments before the collision, to take the vessel out in a big circle and back to his home in Belvedere, a big circle which took this motorboat into the ferry lanes departing Sausalito, which Mr. Rhodes, he lives in Belvedere. He has a view of that. He testified that he knew that they were traveling into the ferry lanes. He, of critical importance, Mr. Rhodes was serving as the lookout on this vessel. And he not only served as the lookout throughout the day, he testified that he served as the lookout on the vessel moments before the collision, two or three minutes before, and he was studying the traffic of vessels. Does his duty or does his liability arise out of his participating in the operation of the boat, in your argument, or does it stem from his ownership? Well, it stems from his ownership. And that's what the Comeric case says. An owner of a vessel owes a duty of reasonable care under the circumstances. And then the extent of the duty depends on the circumstances. So if he were to say, Mr. Holzhauer, you can take my boat out for a ride, then the circumstances would be, was that a reasonable decision to allow this individual with whatever experience he had? Here, the totality of the circumstances and his conduct must be judged in what he did throughout the day and how much involvement he had in the operation of the vessel, the reasonable care under these circumstances where he so if I'm taking my son out for a lesson in my car to practice driving and I'm actively involved and I say, oh, you don't have to stop at this stop sign or don't worry about this or take this particularly busy road, I have a duty of reasonable care as an owner of the vessel. As the owner of the vehicle or as the person who's co-taking charge of making sure that the driver doesn't make any accidents? All of the above. Here he is a co-actor in the operation of the vessel. And critically, Your Honor, the ---- Well, that was my question. Because your brief and your argument appears to be that as the owner, he had an obligation to do this. And so that no owner can ever go down and have a party and give up the operation of the boat. And that can't be right. No, that is not right. So the owner only must exercise reasonable care under whatever the circumstances may be. So here it's the experience level of Mr. Holzhauer. It's the traffic conditions. It's the nature of the boat, all of these things. And so what we're saying is the district court, A, should have applied the correct standard of care, not the standard. In the Wiseman case, the court said, well, even though the defendant was a mere passenger, if a mere passenger becomes involved in the operation of the vessel, then maybe even a passenger can be liable. And, in fact, in the Wiseman case, they found that the defendant, it was proper to bring a claim against the defendant and to judge that party's, that non-owner's  But here we have an owner. So the owner has a different standard applicable to the owner, which is reasonable care. So then we turn to what is the reasonable care under the circumstances. And I think the point that makes this, the fact in the record that makes this abundantly clear is that Mr. Rhodes testified, this is an individual, we're looking at the totality of the circumstances, that he was serving as a lookout. And he was watching for traffic leaving the Sausalito shoreline on the right side of the vessel, on the west side of the, to the west. And he was looking at vessels leaving the marinas. But also in that exact location was the San Francisco, leaving the ferry terminal with its engines running, backing out. And so he is the person who's serving as a lookout, sees the ferry boat, leaving the terminal. That would be the same even if he was a passenger and was up there helping out. Well, why is, why, Camara composes a. Is that your, is that. No. That's not your basis of your argument. No. My argument is that Camara composes a duty, a special duty on the owner of a vessel to act reasonably and that the jury in this case could have found, reasonably found that Mr. Rhodes shared some degree of responsibility as the individual who selected the course that day, as the individual who was serving as the lookout that day under a number of things that Mr. Rhodes did in operating the vessel. Another critical legal point that we don't emphasize, perhaps in the brief, Your Honor, is the reliable transfer case. And the reliable transfer case mandates, and the maritime law used to have many rules applying to collision cases. They had the last clear chance rule. If a party was 51 percent at fault, they couldn't, they could not, they were automatically liable. And in reliable transfer, the Supreme Court said we're going to require in a collision case that all parties be adjudicated and that the trier effect must determine the proportionate fair share of responsibility of all parties controlling the actions of the vessels. And so when the district court granted that the judgment is a matter of law, it altered the controlling rule under reliable transfer, which says you must include the actions of all parties to fairly adjudicate and allocate proportionate fault. But what troubles me is. Counsel. Yes, Your Honor. I'm sorry. Just go ahead. My question was going to be this. I thought reliable transfer was based on the idea that the Supreme Court at an earlier period had adopted the divided damages rule in a case called Schooner-Catherine, and that went way back to the early days of the Middle Ages and the laws of Oleron. But by the time it was before the court in reliable transfer, almost all the nations of the world and almost all the states had gone over to comparative fault. And so the Supreme Court in reliable transfer was just saying we're going to comparative fault. That's correct, Your Honor. That was the basis of the original decision. But the practice has been since that in the Ninth Circuit and in the trial courts that the finding has been that reliable transfer requires the evaluation of proportionate fault of all parties. And what the district court did here is it not only said to, it not only granted the motion for judgment as a matter of law, it instructed the jury that you may not consider the role of Mr. Rhodes and you must conclude, you must allocate 100 percent responsibility between Mr. Holzhauer and the district. We've now created an artificial construct that does not comply with the requirements of reliable transfer. And so it's important in looking at the cases to realize that there were two problems here. And one is, three problems. One is we're going to, we're not going to apply reliable transfer. We're going to take away the consideration of one party. We're going to apply the wrong standard to Mr. Rhodes as a passenger rather than an owner. And finally, we're going to ignore the evidence, which, again, we're just asking whether Mr. Rhodes could have been at 1 percent at fault or 5 percent at fault or 30 percent at fault. But there's a substantial amount of evidence that would suggest that it would have been appropriate for the jury to allocate some fault to Mr. Rhodes. But what troubles me is. Counsel, go ahead. What I was going to say. I thought you should address Judge Du's question. Thank you, Judge Gould. What troubles me is that in the, in the opposition brief to the motion for judgment as a matter of law and arguments before the district court, your client took the position that Mr. Rhodes did nothing wrong. And perhaps as a matter of strategy, to point liability away from the speedboat, but now you're taking an inconsistent position, because now you're saying that, yes, he should have been a portion liability or false because he did do something wrong. Isn't that inconsistent? No, that's fair. The arguments of counsel, of course, were not evidence or determinative. We said to district court, we said, well, Your Honor, we're going to argue this, but in many cases, juries don't agree with what we argue, and so we must look at the evidence. And the evidence here certainly is sufficient. I was arguing that Mr. Holzhauer wasn't responsible, but certainly there was evidence that supported that, as there was sufficient evidence to support an allocation to Mr. Rhodes. So I'm not going to argue, we didn't argue the fault of the small boat for tactical reasons. But we pointed out to the district court all of the evidence that we've summarized in our briefs that was sufficient to allow this issue to go to the jury. And by the district court taking this away from the jury the night before argument, after the whole case had been put on, and creating an artificial construct that the And if I may, I have a few seconds on the issue of the Sons damages, which I'd like to point out by emphasis. I'll take a few seconds. Okay, a few seconds. I have 42 seconds. I'll use those. The point I would like the Court to look at in the decision regarding the Sons damages is the fundamental difference between the jury awarding a nominal sum to the Sons and the jury awarding zero. Zero is not an option for the jury. That is a finding of no damage, which conflicts with the record. So on that issue, the point we want to make is just to draw that distinction. The difference between $1 and $0 is a fundamental difference. And here the jury did not have the right to say there is no damages suffered. They could have done a nominal award. But the finding of zero damages was contrary to the jury instructions, of course, the evidence. Thank you. All right, who's going next? May it please the Court, good morning. My name is John Giffen. I represent David Rhodes as a defendant. And I would like to address, and I have split our 13 minutes with Mr. Welton here, who also represents Mr. Rhodes. I just would like to address some of the issues that Mr. Russo and Mr. Bull raised about the Rule 50 motion. We made the Rule 50 motion on behalf of Mr. Rhodes. First thing, Mr. Bull talks about Judge Tiger's ruling and the fact that he did not Those cases don't require a finding of liability. They simply say that the liability may be apportioned. The jury can still find zero liability on the part of any party to a collision or a maritime lawsuit. Rule 50 is there for a reason, and that is for the judge, in this case Judge Tiger, who was engaged and involved in the lawsuit from the beginning and was certainly engaged in the trial, to review the evidence and make the proper determination of whether or not there is sufficient evidence for the case to go forward against a particular party. And Judge Tiger, on our motion, made that determination. Now, counsel, Mr. Russo talks about applying the Weissman test, and that is whether or not the individual who allowed the person to operate his boat was aware that the person was incapacitated or that there was a joint operation of the boat. Judge Tiger, in his ruling, said that there was no evidence of negligence on the part of Mr. Rhodes. He didn't simply apply that Weissman test lockstep. Judge Tiger looked at the totality of the evidence and said, there is simply not any evidence that Mr. Rhodes was negligent and that he had any duty that owed to Mr. Holzhauer or anybody else. And Judge Tiger has the authority, the legal authority, to determine duty. And Judge Tiger looked at the case, not just Weissman, but all the cases that all the parties cited, and this includes Kermrack, it includes all of those cases, and Judge Tiger decided rightfully so that Mr. Rhodes, simply as the owner of this small boat who was a passenger at that time, had no duty to Mr. Holzhauer. And in your view, that was the only theory in which his liability was premised, was his duty as an owner? No, well, they're arguing that he had some duty to be a lookout, and we certainly say that he had no duty to be a lookout. As Mr. Bull noted, an individual could have operated that boat by themselves. It's certainly appropriate for somebody to take that boat out and operate it without anybody else in the boat. Contrary to what Mr. Bull said, Mr. Rhodes did not say that he was acting as a lookout. He was simply on the boat, and he very specifically said, at the moment of the accident, I was simply looking out over the city and looking at the skyline of San Francisco. He never said that he was acting as a lookout, certainly not at that time. Also, Mr. Bull talks about, infers that there was some sort of a joint operation, because he said Mr. Rhodes told Mr. Holzhauer to take the boat out through the ferry lanes. That isn't what happened. That isn't the testimony. That isn't the evidence. These two men, two friends in their late 60s, simply agreed, let's take out, it's a nice day, let's take it for another turn around the bay so we can look at the sights before we go back to my dock at my home. They mutually agreed on that, and Mr. Rhodes never told Mr. Holzhauer, take that route, do that, do that. Mr. Holzhauer just said, let's take another loop. He said, that's fine, let's do that. So I just don't see, I mean, counsel raised these what if kind of questions. Well, maybe the jury could have decided that he was negligent, but they never argued that he was negligent. They never introduced any evidence that he was negligent, and Judge Tiger, in oral argument, brought that up. He said, show me the evidence. Where is the evidence that this man was negligent and did something wrong? And, in fact, there was never any evidence. They never offered any, and Mr. Rhodes was rightly allowed out of the lawsuit on a Rule 50 motion as a defendant. Thank you very much, Your Honor. Good morning, Your Honor. Please record. My name is Phil Welton, and I represent Mr. Rhodes as a cross-complainant. What the district and Mr. Bull are really saying is that Mr. Rhodes should supervise the operation of this vessel because of his status as an owner and or passenger. That's what they're saying. And I find that really ironic, since the district took the position that this large And I just would submit that's somewhat ironic. But, nevertheless, it would be utterly chaotic if there was imposed a duty of supervision on the part of a passenger and owner of a vessel or a vehicle or any other moving object. Mr. Rhodes had every right to look at the scenery. He could do anything he wanted on that vessel as long as the operator of that vessel was competent and he didn't participate in the joint operation of the vessel. And that's the Weissman case. Now, Mr. Bull cites Kramerich and reliable transfer. Kramerich is a premises liability case, really. And reliable transfer only says that you can divide up responsibility. It begs the question, because negligence was already determined at that point. And we would submit that Judge Tiger was absolutely right in establishing this duty for this passenger. And I think it's the province of the court to determine duty, particularly in maritime cases. Thank you. Good morning, Your Honors. May it please the Court. I'm Lindsay McHassen, and I also represent David Rhodes. I will quickly be covering the issues of 6308, the Coast Guard summary, and also the limitation of liability. I'd first like to address the issue that the purpose of 6308 in its own regulations, that it's not intended to fix civil or criminal liability. And that's true. But here, a summary or photographs do not fix liability. They are not conclusions of law. They are not findings by the Coast Guard. This is simply a summary that was conducted under a duty to conduct an accurate investigation. And under the more narrow construction of this statute, it should be allowed in. But I do think that the most important basis that the district court allowed it. Pardon me? On what basis did the district court allow it? Oh, the district court first realized that there is no report here, actually. Okay? And without any report, this statute is not even implicated. So first he allowed it in saying there is no privilege. Then he allowed it in under the public records of exception, and then an admission of a party opponent. And he made a very well-reasoned decision here and allowed it in on those bases. And here, not only do they have to – does the district have the – they will not – they have to satisfy that they were substantially prejudiced by this admission. And I don't believe that they can do that here. Was that because they were allowing it in to impeach the captain? Right. They were allowing it to impeach – right, to impeach the captain that he did not talk on the phone at the time. And I would like to correct something that was said earlier regarding the district giving these investigative materials to their own expert, which they did. And that is in evidence. And we are not sure what they gave to their own expert, but that was a subject of a motion in limine that they brought and the district did not – the district court denied because they did indeed get investigative materials from the COSART and they did give it to their own expert. And that's initially how this came to be. Moving on to the limitation action, I notice that I'm running out of time here. The district focuses on Western Pioneer. And in Western Pioneer, that court found that the sole proximate cause, the only proximate cause for that collision was a spontaneous navigational error by its captain. And that is just not the case here. In the district court's finding, he cited many reasons why the court was denying this limitation action, that there was no policy regarding the use of cell phones, that the district knew that the captains had cell phones and permitted their use, that experts, Captain Sweeney and Captain Soller, said that it would never be safe for a person serving as the only dedicated lookout to use their cell phone. And indeed, in this instance, the captain was on the phone with Shoreside Management. And so the district court found for all of these reasons, including that he was on his cell phone with Shoreside Management, that there are many reasons that the district had privity and knowledge of all of these negligent actions, not just one sole proximate cause, not just one spontaneous navigational error by a captain, but that there were many different issues going on here, and the district had privity and knowledge of all of them. I'd also like to take this time to talk about the inside-of-home court doctrine. This court spoke about the inside-of-home court doctrine in 1969 in a waterman steamship case. And the court, in quoting Avera, the Florida towing company, said, the more restricted the operation in which a vessel is engaged, the greater will be the degree of control which the corporate owner will be required to exercise over the master, the crew, and subordinate shoreside employees. In other words, the duty to control increased with the possibility of control. Here, this is a ferry that operates solely within the bay. It does not go way out to sea. It does not have the captains that are way far beyond the district's reach. This is solely within the bay. The district, indeed, was on the phone with Shoreside Management at the time or right before this collision. And that phone call shows that the district has control over its master and crew. And there can just be no way that they can claim that they did not have privity or knowledge of any of the negligent acts that were committed that day. And unless there are any questions, I think I would rest on that. Thank you. Thank you very much, Your Honors. Thank you for the chance for rebuttal. Now we seem to have a disagreement. One attorney for Mr. Rhodes says Weissman clearly applies. It was correctly applied by the district court, which of course is consistent with the appellee's briefing before this court. They were candid about indicating that that's what the district court did. On the other hand, another counsel for Mr. Rhodes starts to walk back from that position and indicate that the district court was more broad. One thing is clear from the record. The district court did not, in granting the Rule 50 motion, apply the rule in the jury instructions, which is the rules that should have been applied, the rules of law that should have been applied. It is rare, very rare, as the court's decisions we cite and indicate for a negligence case, particularly a comparative negligence case, multi-party and two people are on the same boat, to grant a Rule 50 motion. It's only two defendants to the jury. There would have to be not a scintilla of possibility for a jury to reasonably find 1 percent negligence. That is simply not the record here, and I won't belabor what the record is. On the privilege issue, I must disagree with my able adversary that the regulations indicate that the privilege applies once a marine investigation has begun under Section 6301. It doesn't start to apply until a report is issued. Sometimes no reports are issued. In this case, maybe the fundamental policy question on the privilege issue is this. Does this court want to open the floodgates to bring the Coast Guard into civil litigation? Every lawyer in this room and every maritime lawyer in this city will start subpoenaing those records. And we believe Congress's intent was not to allow that. Finally, on limitation, the home port exception applies to unseaworthiness actions, not in the moment navigation. And I would urge also that the jury is the best arbiter of whether a party is entitled to $1, $0, or more. Thank you very much, unless there are other questions. Thank you. Thank you, Your Honor. You don't wish to add anything? Right. All right. Thank you very much, counsel, for your arguments. They are greatly appreciated. And the matters just argued are submitted for decision. That concludes our court's calendar for today, and the court stands adjourned.
judges: Schroeder, Gould, Du